UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BRIAN CHRISTIAN, #216726,

       Petitioner,

v.
                              Case No. 2:06-CV-13547
                              Honorable George Caram Steeh
                              Magistrate Judge R. Steven Whalen

CARMEN PALMER,

       Respondent.

_____/

OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY

Petitioner, Brian Christian, is a state inmate currently incarcerated at Boyer Road

Correctional Facility in Carson City, Michigan, where Blaine C. Lafler is the warden. At the time

Petitioner initially filed his request for habeas relief, he was incarcerated at Riverside Correctional

Facility in Ionia, Michigan where Carmen Palmer was the warden. Petitioner was convicted of two

charges of third-degree criminal sexual conduct (CSC)[1]. He filed a *pro se* petition for a writ of

habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court will deny the

petition.

**I. BACKGROUND**

Petitioner was tried in Bay County, Michigan. On November 19, 2002, Petitioner entered

a plea of no-contest on to a reduced charge of third-degree criminal sexual conduct, Mich. Comp.

---

[1]Seven separate CSC cases were filed in state district and circuit courts against Petitioner.
Per the plea agreement set forth below, the state agreed to accept a plea of no-contest relative to
only two of the cases, # 01-1492-S & # 01-1493-S. These cases were initially charged as first-
degree CSC cases, but were reduced for plea purposes to third-degree CSC offenses.

Laws §750.520d. Petitioner was also sentenced as an habitual offender under Mich. Comp. Laws §769.10 for 13 to 22½ years' imprisonment.

The conviction arose from numerous allegations of criminal sexual conduct between Petitioner and his daughter, Audriana Christian (age 4), step-daughter Theresa Christian (age 7), step-daughter Amanda Christian (age 9), and Chari Wagner[2]. On November 19, 2002, Petitioner pled no-contest to two charges of third-degree CSC as well as agreeing to the following:

> The People agree not to seek further charges against Brian Christian for criminal sexual conduct committed upon Theresa Christian, Audriana Christian, Chari Wagner, or Amanda Christian, which may have occurred prior to 2002.
>
> The People agree that the Defendant may withdraw his plea in Circuit Court File No. 99-1049-C of Criminal Sexual Conduct - Fourth Degree, with credit in the present cases for any time already served in Circuit Court File No. 99-1049-C and 00-1182-C.
>
> Defendant agrees that there will be no challenge to Failure to Register As A Sex Offender in Circuit Court File No. 00-1182-C.
>
> The parties agree to a maximum - minimum of thirteen (13) years, that is, a cap of 13 years on the minimum.
>
> Defendant Brian Christian waives any and all right to appeal.
>
> The Court has not participated in the plea bargaining process.

(Ans. to Pet., Ex. A, Plea Agree.). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the issue of whether Petitioner's sentence was disproportionate, thereby warranting re-sentencing. In a standard order, the Michigan Court of Appeals denied relief. *People v. Christian,* No: 251463 (Mich. Ct. App. Nov. 17, 2003). Petitioner filed an application

---

[2]Circuit Court File #s: 01-1488-S; 01-1489-S; 01-1490-S; 01-1491-S & 02-10036-S were dismissed as part of the plea arrangement. Case #s 01-1492-S & 01-1493-S were reduced from first-degree CSC to third-degree CSC.

for leave to appeal with the Michigan Supreme Court raising the same issue; and relief was likewise denied. *People v. Christian,* 470 Mich. 860; 680 N.W.2d 417 (Table) (Mich. April 30, 2004).

Petitioner then filed a motion for relief from judgment in the trial court raising the following claims: (1) whether Petitioner received ineffective assistance of counsel when he failed to inform Petitioner about a plea agreement whereby a seven-year cap on the minimum was offered; (2) whether Petitioner's plea was voluntary and knowing when he was unaware that the complaining witness recanted her story; and (3) whether Petitioner was deprived of effective assistance of appellate counsel when counsel failed to raise issues (1) and (2) on appeal. The trial court denied Petitioner's motion for relief from judgment on December 22, 2004.

Petitioner subsequently filed a delayed application for leave to appeal with the Michigan Court of Appeals in order to appeal the decision of the trial court; and relief was denied in a standard order. *People v. Christian,* No: 262947 (Mich. Ct. App. Dec. 6, 2005). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, and relief was also denied. *People v. Christian,* 474 Mich. 885; 715 N.W.2d 881 (2006) (Table) (Mich. June 26, 2006).

On August 8, 2006, Petitioner filed the habeas petition presently before the Court and raises the following issues: (1) whether Petitioner's sentence was disproportionate, thereby warranting re-sentencing; (2) whether Petitioner received ineffective assistance of counsel when he failed to inform Petitioner about a plea agreement whereby a seven-year cap on the minimum was offered; (3) whether Petitioner's plea was voluntary and knowing when he was unaware that the complaining witness recanted her story; and (4) whether Petitioner was deprived of effective assistance of appellate counsel when counsel failed to raise issues (2) and (3) on appeal.

3

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's

habeas corpus review of state court decisions.  Petitioner is entitled to the writ of habeas corpus if

he can show that the state court's adjudication of his claim on the merits:

>  (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented at the State court proceedings.

*28 U.S.C. § 2254(d).*

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A state court's decision

is an "unreasonable application of" clearly established federal law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case."  *Id.* at 413.

"[A]n *unreasonable* application of federal law is different fro an *incorrect* application of

federal law."  *Id.* at 410 (emphasis in original).  "[A] federal habeas court making the 'unreasonable

application' inquiry should ask whether the state court's application of clearly established federal

law objectively unreasonable."  *Id.* at 409.  "Furthermore, state findings of fact are presumed to be

correct unless the defendant can rebut the presumption by clear and convincing evidence."  *Baze v.*

*Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III. DISCUSSION

### A. Disproportionate of Sentence

Petitioner argues that his sentence of 13 to 22½ years' imprisonment is "disproportionately harsh" relative to the offenses of which he was convicted.

There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan,* 501 U.S. 957, 994-95 (1997). However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *Id.* at 995. The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F.3d 60, 62-63 (6th Cir. 1995); see also *United States v. Williams,* 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that, generally a sentence within statutory limitations does not violate the Eighth Amendment); *Hutto v. Davis,* 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted).

Under Michigan law, the maximum sentence for third-degree CSC is fifteen years. Mich. Comp. Laws §750.520d(f)(2). However, Petitioner was also sentenced under the sentencing enhancement statute which allows the maximum term of the first offense to be increased one and a half times. Mich. Comp. Laws §769.10(1)(a)[3]. Since both offenses are third-degree CSC charges, one and a half times fifteen years is 22½ years, which is the maximum sentence imposed upon

---

[3]Petitioner was convicted of arson/preparation to burn personal property on October 10, 1981 in Bay County Circuit Court. He was also convicted in 1988 for receiving and concealing stolen property in excess of $100.00. (Plea Tr. 11/19/02, at 105-06).

5

Petitioner in this case. Therefore, Petitioner was sentenced in accordance with the statutory maximum. Petitioner fails to state an Eighth Amendment violation under which he would be entitled to habeas corpus relief.

## B. Procedural Default

Respondent asserts that Petitioner's second and third claims regarding his trial counsel's alleged failure to fully inform Petitioner regarding certain aspects of the plea agreement are procedurally defaulted because he raised these claims for the first time in a motion for post-conviction relief when he could have raised them on direct appeal. The Court agrees. MCR 6.508(D)(3) provides that a court may not grant relief to a defendant if a motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal absent a showing of good cause for failure to raise such grounds previously and actual prejudice resulting therefrom. In denying Petitioner's motion for relief from judgment, the Bay County Circuit Court held that Petitioner was procedurally barred from raising what are now his second and third habeas claims because he could have raised these claims in his initial application for leave with the Michigan Court of Appeals and failed to do so. The Michigan appellate courts denied relief for the same reason. Moreover, "[i]t is well-established in [the Sixth Circuit] that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent state ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). (citations omitted). Therefore, Petitioner has procedurally defaulted what are now his second and third habeas claims.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless

6

the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Although the Petitioner's second and third claims are procedurally defaulted, the Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); see also *Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits of the Petitioner's claims.

**1. Ineffective Assistance of Counsel**

Petitioner claims that he received ineffective assistance of counsel because his attorney did not inform him that the prosecutor was willing to accept a seven-year cap on the minimum sentence as opposed to the thirteen-year cap that was ultimately agreed upon in the plea arrangement.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as

guaranteed by the Sixth Amendment. *Strickland v. Washington,*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

In this case, the record belies Petitioner's ineffective assistance of counsel claim. Petitioner was well aware of the seven-year cap offer as indicated below prior to entering into the plea agreement:

> MR. JANER [Defense Counsel]: Your Honor, this has been a - a very involved and - and complex case wi - with - with the number of files that is well over a year in age that I have been representing Mr. Christian regarding these offenses.
>
> Your Honor, back when we - we started our - our - an initial offer came to Mr. Christian that was recommending - from the prosecution - that we had a 7-day cap at that time - a 7-day, 7-year cap on the minimum sentence.

There was a time that Brian was willing to accept that, however, he decided to challenge the prior plea agreement that involved these matters, also, and we lost on that motion. We then brought other motions and prepared for trial, and we lost the benefit of that at one time, having a 7-year minimum. As the Court is aware now, the agreement is that of 13 years.

(Sent. Tr., 1/21/03 at 11). Petitioner, who was present at the hearing, did not make any statements on the record regarding his lack of knowledge about the seven-year cap representation made by defense counsel. Moreover, the "Criminal Status Conference Questionnaire" states "2 counts CSC 3rd [degree] with sentencing cap of 84 [months]." (Resp. Ans., Ex. E, "Criminal Status Conference Questionnaire"). The form further indicates that: "[t]he defense has considered the plea agreement. It is likely to be [ ] rejected." *Id.* Finally, an order entered December 11, 2001 after the status conference indicates that the plea agreement was in fact rejected by the Petitioner. (Resp. Ans., Ex. F, "Order Following Review of Criminal Status Conference Questionnaire").

Since the record indicates that Petitioner had knowledge of the previous plea agreement which included language about the seven-year cap on the minimum sentence, and rejected it, his argument that his attorney was ineffective because of his failure to inform Petitioner about that condition of the agreement is without merit.

### 2. Knowing & Voluntary Plea Agreement

Petitioner argues that his no-contest plea was not knowing and voluntary because he had no knowledge that the complaining witness recanted her testimony. Therefore, if he had been armed with that information, he would not have entered into the plea agreement. A plea of guilty is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances.[4]

---

[4]"Because a plea of *nolo contendere* is treated as an admission of guilt, the law applicable to guilty pleas is also applicable to a plea of *nolo contendere. Carter v. Collins,* 918 F.2d 1198,

9

See *Brady v. United States,* 397 U.S. 742, 748-49 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th

Cir. 1994). The Constitution requires, for the plea to be valid, that the defendant be informed of all

the direct consequences of his plea. *Brady v. United States,* 397 U.S. at 755; *King v. Dutton,* 17

F.3d at 153. Where the defendant "was fully aware of the likely consequences when he pleaded

guilty [,] it is not unfair to expect him to live with those consequences [.]" *Mabry v. Johnson,* 467

U.S. 504, 511 (1984).

> Thus, [it] is well settled that a voluntary and intelligent plea of guilty made by an
> accused person, who has been advised by competent counsel, may not be collaterally
> attacked. It is also well settled that plea agreements are consistent with the
> requirements of voluntariness and intelligence - because each side may obtain
> advantages when a guilty plea is exchanged for sentencing concessions, the
> agreement is no less voluntary than any other bargained-for-exchange.

*Id.* at 508. (footnotes omitted). It is only when the consensual character of a guilty plea is called into

question that the validity of a guilty plea may be impaired. *Id.*

In this case, again, the record belies Petitioner's involuntary and unknowing plea claim.

First, the trial court in its order denying Petitioner's motion for relief from judgment stated as

follows:

> The defendant next alleges that he first learned of evidence of the complaining
> witness['] recantation on February 14, 2003, about one month after sentencing. He
> argues that, had he known of this, he would not have pled [nolo contendere]. He
> argues counsel did not disclose this to him.
>
> The defendant's assertions of the lack of knowledge regarding the witness's
> recantation, are without foundation in the record. A motion for specific performance
> of a prior plea agreement was heard by the court on January 9, 2002. The defendant
> was present at this motion, with his trial attorney. The transcript of this motion on
> pages 95, 99, 115, and 121-122, clearly indicates that the complaining witness had
> recanted her testimony one or more times in the past. The defendant's claim that he
> did [not] have any knowledge of any alleged recantation until February 14, 2003 is

1200 n. 1 (5th Cir. 1990) (citations omitted).

unsupported by the record. The defendant knowing of the alleged witness recantation still pled no contest to the charges for which he was convicted.

(Resp. Ans., Ex. C, "Opinion and Order Denying Defendant's Motion for Relief from Judgment" at 4).

Second, while ruling on a motion during a hearing, which took place approximately eight months before the no-contest plea, at which Petitioner was present, the trial court stated as follows:

He also testified, and I quote and emphasize that his feeling in his heart in this matter - that this matter was over with respect to Mr. Christian due to the - essentially the victim's recantation as has been described here today.
* * *
Of course, Mr. Asbury also testified, and he admitted that the plea agreement was negotiated from a - essentially a life offense down to a CSC, Fourth because the victim was recanting as is - using his words.
* * *
I think the practicality of this whole situation is probably at that point in time Mr. Asbury also anticipated that no charges would ever be brought in the future because the victim simply apparently had recanted what she had initially told the policing authorities, and I don't think probably anybody, in my opinion, anyway, expected that charges would be brought, but that's not dispositive in this case.

(Mo. Tr., 3/15/02, at 28-29).

Third, in Petitioner's own words at his preliminary examination, which took place approximately five months before a plea agreement was reached, he stated as follows:

THE DEFENDANT: I'm not trying to disrespect you, sir.

THE COURT: Sure. No, I – I –

THE DEFENDANT: But, you know – I mean enough's enough here. I mean, like I said, here we have a victim here that's recanted statements, one right after another and everybody's just standin' back lettin' this go down here.

THE COURT: Well --

11

THE DEFENDANT: It's just fair (sic). I mean that's just like sayin' if I see an armed – someone walkin' down the street, I pick up a phone, I call the police and say, "I just seen 'em rob a store." Anybody can make a statement here.

THE COURT: That – and I --

THE DEFENDANT: But when you recant it, you cannot --

THE COURT: Right.

THE DEFENDANT: How can you judge it?

THE COURT: Well, I do appreciate what you are saying, Mr. Christian.

THE DEFENDANT: Yeah, well.

THE COURT: But, you know, I – what I'm saying is I'm not – it's not for me to decide that issue. It'll be a Circuit Judge, and --

THE DEFENDANT: Okay.

(Prelim. Exam Tr., 6/11/02, at 59-60).

Finally, upon the Court's review of the plea transcript, it agrees with the trial court's

determination that:

> Mr. Christian understands the nature of these charges, is acting voluntarily and with understanding here today and that there's been no undue influence, no threats, no force and he's acting under no duress, that no promises have been made to him or other inducements have been made to him except for those specifically stated in the record in this written plea agreement as recited on the record and as modified after its recitation.

(Plea Tr. 11/19/02, at 104-05).

Accordingly, the record does not support Petitioner's claim that he had no knowledge of the

recanted testimony of the victim in this case prior to entering into a plea agreement in this matter.

Habeas relief is therefore, unwarranted relative to this claim.

## C. Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal the above discussed issues relative to his acceptance of a plea agreement in this case. To show prejudice in the context of an appellate counsel claim, Petitioner must show that his claims would have succeeded on appeal. See *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000). It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes,* 463 U.S. 754, 754 (1983). Appellate counsel may deliver a deficient performance and prejudice a defendant by omitting a "dead bang winner," which is defined as "an issue which was obvious from the trial record and would have resulted in a reversal on appeal." See *Meade v. Lavigne,* 265 F.Supp.2d 849, 870 (E.D. Mich. 2003). (internal citations omitted). As explained above, Petitioner's plea based claims are without merit. Thus, he cannot show that he was prejudiced by appellate counsel's failure to raise these claims on direct appeal. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

## D. Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an

intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Petitioner's sentencing claim is not cognizable under habeas review; his ineffective assistance of counsel and plea based claims are refuted by the record; and his ineffective assistance of appellate counsel claim cannot survive as it is dependent upon the merit of Petitioner's second and third claims which are without merit. Therefore, the court denies a certificate of appealability.

## IV. CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's "Motion to Appoint Counsel" [Dkt. #27] is

DENIED as MOOT.

IT IS FURTHER ORDERED that Petitioner's "Motion for Order to Show Cause" [Dkt. #32]

is DENIED as MOOT.


Dated: July 8, 2008

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 8, 2008, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk